**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07-22988-CIV-MORENO/TORRES

BUCKLEY TOWERS
CONDOMINIUM, INC.,

          Plaintiff,

v.

QBE INSURANCE CORPORATION,

          Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S AMENDED**
**MOTION TO DISMISS COUNTS I, III, AND IV OF THE AMENDED COMPLAINT**

      This matter is before the Court on Defendant's, QBE Insurance Corp. ("QBE"),

Amended Motion to Dismiss Counts I, III, and IV of the Amended Complaint [D.E. 76] filed

in this case by Plaintiff Buckley Towers Condominium, Inc. ("Buckley").  The Court has

reviewed the motion, Buckley's response, the reply, related authorities submitted by the

parties, and the record in the case.  For the foregoing reasons, the motion to dismiss should

be granted in part and denied in part.

## I.  BACKGROUND

      Buckley filed this declaratory judgment and contract action against QBE arising from

property damage allegedly suffered due to Hurricane Wilma at Buckley's 576 unit

condominium complex.  Buckley had purchased a commercial residential property insurance

policy from QBE in May 2005 at a substantial premium.  During the term of that policy,

Hurricane Wilma struck on October 24, 2005, allegedly causing structural damage throughout

the condominium complex.  Buckley filed a claim on the policy with QBE.  Despite conducting

inspections by QBE representatives at the property, the amended complaint alleges that QBE, two and one-half years later, failed to adjust, pay or settle the claim. [D.E. 52 ¶¶1-15].

The amended complaint alleges four causes of action:   (1) declaratory judgment; (2) breach of contract for failure to provide coverage and seeking recovery of actual cash value; (3) breach of contract for failure to provide coverage and seeking replacement cost value; (4) breach of implied warranty of good faith and fair dealing; and (5) statutory violation of Fla.Stat. § 627.70131 by failing to pay or deny coverage within 90 days.  QBE now moves to dismiss Counts I, III, IV, and V of the amended complaint [D.E. 76], but does not challenge at the pleading stage Count II for breach of contract and recovery of actual cash value.

## II.   ANALYSIS

The purpose of a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It is read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a 12(b)(6) motion to dismiss, a complaint need not be detailed, but the factual allegations contained therein "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965.  The Court does not require heightened fact pleading, but does require enough facts to state a claim to relief that is plausible on its face.  *Id.* at 1974.  In other words, "in considering a motion to dismiss, a court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions."  *Jackson v. Bellsouth Telecomm., Inc.,* 181 F. Supp. 2d, 1345, 1353 (S.D. Fla. 2001).

In construing the allegations in the complaint, the Court must accept such allegations as true, and view them in a light most favorable to the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993); *Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 127 S.Ct. at 1965 (internal citation omitted).

The Court must, finally, analyze the issues raised in the motion to dismiss under Florida law, as the parties have agreed that such law provides the rule of decision in this case arising from a contract for insurance on real property in this state.

## A.   *Count I - Declaratory Judgment*

The "case or controversy" requirement of the Constitution is an important limitation on federal court jurisdiction. U.S. Const., art. III, § 2. "To satisfy the case and controversy requirement of Article III, a plaintiff must have suffered some actual injury that can be remedied or redressed by a favorable judicial decision." *National Advertising Co. v. City of Ft. Lauderdale,* 934 F.2d 283, 285-86 (11th Cir. 1991). This requirement shields federal courts from being drawn into disputes as to abstract or hypothetical cases, or ones in which purely advisory opinions affecting a dispute are being sought. *E.g., Aetna Life Ins Co. v. Haworth,* 300 U.S. 227, 240 (1937); *Webster v. Reproductive Health Servs.,* 492 U.S. 490, 500 (1989).

As explained by the Eleventh Circuit:

> The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

*Emory v. Peeler,* 756 F.2d 1547, 1551-52 (11th Cir. 1985).  *Accord* 13A C. Wright & A. Miller, *Federal Practice & Procedure,* § 3532.1 at 114 (2d ed.) ("The central perception [of the justiciability doctrines] is that courts should not render decisions absent a genuine need to resolve a real dispute.  Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance.").

Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, under which Count I of the amended complaint must be based, is a grant of jurisdiction only as to those rights and liabilities that are immediate and real, or that are certain to arise.  *E.g., Calderon v. Ashmus,* 523 U.S. 740, 746-47 (1998) (no case or controversy where action seeks declaratory relief as to validity of defenses that may or may not be raised in subsequent litigation).[1]  A party seeking a declaration judgment must allege facts in a complaint from which it appears that there is a substantial likelihood that it will suffer injury in the future.  *Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983); *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1205 (11th Cir. 1991)).

First, we agree with QBE that Buckley has not alleged a basis to proceed with a declaratory judgment claim with regard to its allegations regarding the validity and enforceability of the Policy generally, or the co-insurance provision's compliance with Fla. Stat.

---

[1]    The amended complaint is technically based only on Chapter 86, Florida Statutes, which is the state's version of the Declaratory Judgments Act.  *See* Fla. Stat. § 86.021.  The state statute is, however, a procedural mechanism within the Civil Practice and Procedure Chapters, Title VI, that confers subject matter jurisdiction on Florida circuit and county courts.  There is nothing in this particular statutory provision that confers any substantive rights.  Therefore, as this is a diversity action in federal court, we cannot apply that statute to determine whether or not a declaratory action can lie.  *See, e.g., McMahon v. Toto,* 256 F.3d 1120, 1131-32 (11th Cir. 2001) (applying *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)).  As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different.  *Compare Malowney,* 193 F.3d at 136, *with Floyd v. Guardian Life Ins. Co.,* 415 So. 2d 103, 104 (Fla. 3d DCA 1982).

§ 627.701 in particular. [D.E. 52 ¶¶21, 27-28]. Buckley has only generally alleged that it is in doubt as to that issue, but has not alleged that there is in fact any dispute between the parties as to the overall enforceability of the insurance contract. Indeed, QBE's response stipulates that the Policy is valid and enforceable. [D.E. 76 at 6]. Therefore, there is no actual injury that Buckley has alleged in the complaint that requires declaratory adjudication of the general enforceability of the contract.

Similarly, as to any issues relating to the co-insurance provision of the contract, QBE has also stipulated that it shall not seek to enforce the co-insurance penalty. [D.E. 76 at 7]. Moreover, beyond a general contention that the co-insurance provision is void, the amended complaint raises this matter in only a conclusory fashion that is inadequate for a declaratory judgment. There is thus no tangible justiciable case or controversy with respect to this provision, as there have been no factual allegations that show a "substantial likelihood" that Buckley has or will suffer an actual or imminent injury. To the contrary, the injury alleged in this amended complaint is purely conjectural, hypothetical, and contingent. *See, e.g., Bowen v. First Family Fin. Svs., Inc.* 233 F.3d 1331, 1339 (11th Cir. 2000) (holding that no case or controversy existed over enforceability of arbitration agreement because it was uncertain whether anyone would seek to enforce that agreement in the future). Accordingly, as with the broader question of enforceability of the contract, the co-insurance issues are moot for which no judicial determination is necessary. The motion should be granted with respect to these aspects of the declaratory judgment claim in Count I of the amended complaint.

Second, we take a different view with the remaining arguments in the motion to dismiss the declaratory judgment count in its entirety. QBE argues that declaratory relief is not generally available to settle insurance coverage questions where no contract construction is required, and that no such construction issue is yet ripe. QBE also argues that where the

real dispute is of a factual nature concerning loss and valuation dismissal of a declaratory relief action is proper, citing state appellate cases to that effect.

The problem with that argument, however, is that the amended complaint contains sufficient factual allegations that there is a real coverage dispute in this case, and further that QBE has refused to settle the claim after much time has passed in accordance with its obligations under the policy. [D.E. 52 ¶¶22-25]. Buckley has alleged that it submitted its claim for hurricane damages, but QBE has yet to "timely adjust, pay or settle [its] claims for damage it sustained from Hurricane Wilma." [*Id.* ¶22]. This failure to act is sufficient for Buckley to infer the existence of a dispute as to its right to coverage under the insurance policy. There is a definite, concrete injury alleged in the amended complaint that satisfies the case or controversy requirement and the Declaratory Judgment Act. *See, e.g., Quadomain Condo. Ass'n, Inc. v. QBE Ins. Corp.,* 2007 WL 1424596 (S.D. Fla. May 14, 2007); *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.,* 504 F. Supp. 2d 1307, 1309-12 (S.D. Fla. 2007).

Therefore, as to remaining factual allegations contained in Count I of the amended complaint, there is no basis to dismiss the claim at the pleading stage. The motion should be denied except with respect to the issues discussed above having to do with the enforceability of the contract generally or the allegedly void co-insurance provision.

### B.  *Count III - Replacement Costs*

QBE has not challenged Buckley's breach of contract claim with respect to recovery of actual cash value coverage. QBE has, however, moved to dismiss Count III that is also a breach of contract claim but relating specifically to the replacement cost provision of the policy. That provision provides optional coverage, in addition to actual cash value coverage, for the replacement cost for any loss or damage unless the lost or damaged property is not actually

repaired and unless the repairs are made as soon as reasonably possible after the loss. [D.E. 52-2 ¶G.3.d.].  QBE argues that Buckley cannot allege a breach of contract claim under this provision because it has not alleged specifically that all relevant repairs or replacements have taken place.  And without that allegation, under Florida law Buckley cannot recover because liability for replacement cost does not arise absent that showing.  *See Ceballo v. Citizens Prop. Ins. Corp.,* 967 So. 2d 811, 815 (Fla. 2007); *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983-84 (Fla. 3d DCA 1994).

Buckley responds that QBE's failure to adjust, pay or settle Buckley's claim, as alleged in the amended complaint, has frustrated Buckley's ability to make all the repairs necessary for it to receive replacement cost reimbursement.  Moreover, Buckley contends that it has in fact made some repairs for which it had to obtain loan financing. [D.E. 52 ¶70].  Plus, even if those repairs had not been made, Buckley contends that the issue is not subject to a motion to dismiss because it is more properly addressed in connection with QBE's affirmative defenses.  Finally, Buckley states that even if the failure to make all repairs or replacements is a condition precedent to recovery of replacement cost damages, QBE's conduct frustrated those efforts and excused the failure of the condition precedent.

Upon review of the caselaw cited by both parties, the Court finds that this issue is not ripe for a motion to dismiss.  None of the cases cited in the motion or reply addressed this particular issue on a motion to dismiss.  The reason why is obvious.  Fundamentally, the elements of the breach of contract (contractual promise, breach of performance, and damages) have been alleged in this Count.  The dispute boils down to whether or not Buckley is entitled to seek replacement cost coverage, which is an issue that is better viewed as Buckley's compliance with a condition precedent under the contract.  QBE argues that it failed to meet that condition, while Buckley claims that it did and that, if it did not, it is QBE's breach of the

contract that let do that failure.  Satisfaction of conditions precedent, however, is not a matter that is adjudicated on a motion to dismiss.

Under Rule 9(c), conditions precedent may be alleged generally in a complaint.  If the defendant disagrees with that allegation, "a denial of performance or occurrence shall be made specifically and with particularity."  Fed. R. Civ. P. 9(c); *see, e.g., Jackson v. Seaboard Cost Line R.R.,* 678 F.2d 992, 1010 (11th Cir. 1982).  The plaintiff then bears the burden of proving that the condition precedent at issue has been satisfied.  *Jackson,* 678 F.2d at 1010.

Here Buckley has generally alleged satisfaction of all conditions precedent.  [D.E. 52 ¶17].  As a matter of pleading that is sufficient.  QBE may of course respond with particularity that Buckley has failed to do so with respect to the replacement cost issue.  And at the summary judgment stage of the case, when Buckley must first show that it complied with that condition, the Court must decide if that is the case or if a trial issue remains for the jury to consider.  The cases cited by QBE in support of their argument illustrate that.  *See Ceballo,* 967 So. 2d at 811 (trial court decided on partial summary judgment that replacement coverage was required; appellate court reversed and Supreme Court affirmed reversal of summary judgment); *State Farm v. Patrick,* 647 So. 2d at 983-84 (trial court awarded damages under replacement coverage provision but appellate court reversed because plaintiff had not proven that repairs or replacement had been completed).

QBE's motion to dismiss this Count must, therefore, be denied because the issue is one of proof, not one of pleading.  Buckley has sufficiently plead its contract claim and its entitlement to replacement cost damages based on its satisfaction of all conditions precedent.  If QBE denies that allegation with particularity, as it apparently will, then Buckley will have to prove that the condition is satisfied or excused.  *See Jackson*, 678 F.2d at 1010.  Now is not the time for Buckley to have do that.

**C.**   ___Count IV - Breach of Implied Covenant of Good Faith and Fair Dealing___

The amended complaint alleges in Count IV that Buckley is entitled to damages based on QBE's breach of its implied covenant of good faith and fair dealing that is part of its insurance contract.  Buckley alleges that the contract provided QBE with discretion to make a reasonably timely coverage and loss determination, for which Buckley had a reasonable commercial expectation.   QBE's failure, after two and one-half years, to exercise that discretion has frustrated Buckley's contractual expectation and resulted in consequential damages to Buckley, for which it seeks compensatory damages and attorneys' fees. [D.E. 52 ¶¶61-71].

QBE, however, moves to dismiss this claim because, as a matter of law, a contractual claim for a breach of the duty of good faith and fair dealing cannot be raised until the coverage litigation has concluded, as is the case with a statutory bad faith claim under Fla. Stat. § 624.155.  QBE maintains that Buckley's contractual claim is nothing more than a bad faith claim disguised as a breach of contract claim.  QBE points repeatedly to Chief Judge Moreno's holding in *Quadomain,* 2007 WL 1424596 at *4-5, that an implied warranty claim is premature within the scope of this coverage dispute.

Buckley responds that its cause of action plead in Count IV is separate and distinct from a cause of action for first-party bad faith, which is extra-contractual in nature, while this implied warranty claim arises strictly from the express contractual provisions that QBE breached that frustrated Buckley's commercial expectations.  Notably, Buckley's response does little to distinguish or reconcile its argument with this Court's decision in *Quadomain.*  At a hearing held on related discovery issues, however, Buckley's counsel argued that we should reconsider or ignore the *Quadomain* decision in response to Judge Middlebrooks's more recent decision in *Chalfonte Condo. Apt. Ass'n v. QBE Ins. Corp.,* No. 06-81046-Civ-Middlebrooks

(S.D. Fla. Dec. 17, 2007), that held that implied warranty claims are an alternative means of recovery for an insured in addition to a statutory bad faith claim under section 624.155 and, consequently, may be raised together with a contractual coverage dispute. Buckley added that *Quadomain* could also be distinguished based on the particular allegations plead in this amended complaint that were not plead in *Quadomain.* In other words, Chief Judge Moreno's Order was based purportedly on only the allegation that QBE failed to "fairly" pay the claim, which was found to be lacking, while this amended complaint alleges more specifically that "QBE's delay and failure to timely adjust Buckley Towers' claim has frustrated the purpose of the Insurance Contract and has disappointed Buckley Towers' reasonable commercial expectations under the Insurance Contract." [D.E. 52 ¶69].

Buckley's arguments notwithstanding, we hold that the *Quadomain* decision squarely applies here. Chief Judge Moreno's Order held that a breach of implied warranty allegation could theoretically be asserted together with an express breach of contract claim arising from the failure to provide property coverage under Florida law, notwithstanding the settled rule that there is no separate cause of action for breach of that implied duty. *See Burger King Corp. v. Weaver,* 169 F.3d 1310, 1316 (11th Cir. 1999), *cited in Quadomain,* 2007 WL 1424596 at *4. Nevertheless, the Court also held that the claim had to be dismissed based upon its overlap with a statutory bad faith claim that can only be brought under Fla. Stat. § 624.155. And because such a bad faith claim is premature before the coverage litigation is adjudicated, *Blanchard v. State Farm Mut. Auto Ins. Co.,* 575 So. 2d 1289, 1291 (Fla. 1991), the Court dismissed the contractual claim for breach of the implied warranty of good faith that was a disguised bad faith claim. *Quadomain,* 2007 WL 1424596 at *5-6.

Buckley's attempts to distinguish that decision from the amended complaint at issue here fail. The claims at issue were in fact materially the same. Although the Order referenced

at one point the failure to "'fairly' pay [the insured's] claim" as being akin to a wrongful bad

faith claim, other parts of the Order also referenced the timeliness issue that Buckley relies

on here:

> In the instant case, Quadomain brings this claim against QBE for
> "failing to pay," "failing to fairly and promptly investigate,"
> "failing to fairly and promptly pay," "failing to fairly and
> promptly settle," and "[o]therwise failing to provide property
> coverage." From the word "promptly," it would appear that
> Quadomain is attempting to limit QBE's discretion regarding the
> timeliness of coverage. The policy at issue contains no express
> provision regarding a deadline for settling a damages claim.

*Quadomain,* 2007 WL 1424596 at *4.

Thus it is plainly clear that fairness *and* timeliness were at the heart of the complaint

at issue in that case, as they are here, which Chief Judge Moreno found were premature and

inappropriate as part and parcel of the contractual coverage dispute. Similarly, the presence

of language in this amended complaint that specifically alleges that Buckley's commercial

expectations have been frustrated does not require a change in the outcome. That allegation

is a legal conclusion; the facts underlying that allegation are all based on the failure to fairly

and promptly settle Buckley's claim. While Chief Judge Moreno recognized that an implied

warranty of good faith claim focuses on "implied contractual obligations and reasonable

expectations," *id.* at *6, he still found that the same factual allegations could not be raised

outside the scope of a bad faith claim under section 624.155.

The same analysis has to apply here. Buckley's claim is based on an implied

contractual obligation based upon its commercially reasonably expectations. Nevertheless,

because the factual allegations underlying its claim are based upon QBE's failure to fairly and

promptly perform under its obligations in the contract, that contractual claim can only be

asserted, if at all, together with the extra-contractual bad faith claim under section 624.155.

We could stop there, of course, based on the practical conclusion that Chief Judge Moreno would likely not view this case differently only one year after his decision in *Quadomain.* But in fairness to Buckley's contrary arguments, we proceed to discuss, briefly, whether or not we should recommend that he reconsider his decision. Having looked at this from a fresh perspective, the conclusion we draw is that the *Quadomain* decision, as well as other courts that reached similar conclusions, reached the correct result under Florida law. *See also Trief v. Am. Gen. Life Ins. Co.*, 444 F. Supp. 2d 1268, 1269 (S.D. Fla. 2006) (Ungaro, J.); *Mid-Continent Cas. Co. v. Royal Palm Estate Builders, Inc.*, 2007 U.S. Dist. LEXIS 74699 (S.D. Fla. 2007) (Hurley, J.); *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 75003 (M.D. Fla. 2006) (Presnell, J.).

After reviewing the arguments in Judge Middlebrooks's Order in *Chalfonte,* the fundamental basis for the contrary view is that, absent express guidance from the Florida Supreme Court or the Florida Legislature, section 624.155 cannot be read to preempt a contractual claim arising from the implied warranty of good faith that is inherent in all insurance contracts. The problem with that theory is that, in fact, the Florida Supreme Court has repeatedly addressed this issue in varying contexts.

The Florida Supreme Court has on many different occasions explained that, prior to 1982, there was *no* "civil remedy" for an insurer's bad faith in the first-party coverage context. For instance, in a case addressing work product privilege for first-party bad faith claims, *Allstate Indemnity Co. v. Ruiz,* the Court held that, the "statutory remedy [under Fla. Stat. §624.155] essentially extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance." 899 So. 2d 1121, 1126, 1129 (Fla. 2005) (citing in part *Fidelity & Casualty Insurance Co. of New York v. Taylor*, 525 So. 2d 908 (Fla. 3d DCA 1987) ("In a 'first-party'

action against an insurance carrier founded upon section 624.155(1)(b), which affirmatively creates a company duty to its insured to act in good faith in its dealings under the policy, liability is based upon the carrier's conduct in processing and paying a given claim.")).

The Court's use of the term "civil remedy" is significant. The Court did not merely say civil tort claim or non-contractual claim or extra-contractual claim. It said no "civil remedy" was available. That would obviously include the claim presented here, a breach of contract claim for contractual damages under the implied warranty of good faith and fair dealing. This rebuts Buckley's argument that its implied warranty claim is not preempted by section 624.155 because it is contractual, while the statutory bad faith claim is extra-contractual. Both types of claims never existed prior to 1982.

*Ruiz* is by no means unique. In *Macola v. Government Employees Insurance Co.,* 953 So. 2d 451 (Fla. 2006), the Supreme Court was addressing, in a third-party bad faith context, whether a common law claim could be asserted in the face of an insurer's tender of policy limits following receipt of a civil remedy notice under the statute. The Court again reviewed Florida's bad faith jurisprudence and acknowledged that common law first-party bad faith actions never existed. "If an insurer acted in bad faith in settling a claim filed by its insured, the only common law action available to the insured was a breach of contract action against the insurer in which damages were limited to those contemplated by the parties in the insurance policy." *Id.* at 455.

*Macola* cited in support for that conclusion its earlier decision in *Tatel Enterprises, Inc. v. Aetna Casualty and Surety Co.,* where the Court explained that "the civil remedy provided in subdivision (1)(b)(1) *was not in existence for first-party insureds before the adoption of the civil remedy statute.*" 753 So. 2d 1278, 1283 (Fla. 2000) (emphasis added). The Court added that for "[plaintiff] there is no remedy without the statute." *Id.* As a consequence, the

Supreme Court affirmed summary judgment against a policyholder that filed suit "for breach of a covenant of good faith and fair dealing to promptly negotiate and settle [plaintiff's] claim" because the insurer had complied with the cure provision found in Fla. Stat. § 624.155(2)(d) by paying the underling contract damages within sixty days from the date the plaintiff filed its bad-faith notice. The plaintiff had argued that the insurer was required to pay not only the damages flowing directly from the policy but also "all extra-contractual damages flowing from Aetna's alleged failure to make a good faith attempt to settle [plaintiff's] claim." *Id.* at 1279.

If, as Buckley's argument implies, the plaintiff in that case could have ignored the statutory bad faith claim (and the conditions precedent in that statute that doomed his claim) and filed instead a breach of implied warranty claim together with his underlying coverage dispute, how could the Florida Supreme Court have reached the conclusion that the plaintiff's only theory of recovery arose under the statute? And why would it have said in *Macola* that, absent the statutory bad faith claim, an insured in Florida was limited to the breach of contract claim for only the limits of the policy. Thus, if the plaintiffs referred to in *Macola* and *Tatel* could not recover their extra-contractual damages except as strictly provided for under the statute, how can Buckley recover extra-contractual damages here (i.e. the financing cost incurred from the delayed payment on the policy) when it had no civil remedy for those damages, according to the Court, before the 1982 legislative act that enacted section 624.155? "[L]ogic and common sense" – to use the words of the Florida Supreme Court – dictate that Buckley cannot recover those extra-contractual damages here either. *Id.* at 1284.

Further support for this conclusion is found in earlier cases. In *State Farm Mutual Auto Insurance Co. v. Laforet,* the Court reviewed extensively the history of both first-party and third-party bad faith claims. 658 So. 2d 55 (Fla. 1995). Again, the Court explained that, while third-party actions against insurers for breach of their duty of good faith dated back to

1938, Florida courts had refused to recognize any liability against the insurer to its insureds based upon the insurer's lack of good faith in settling claims. *Id.* at 57-59.

One of the examples the court cited was an appellate court decision from the First District, *Baxter v. Royal Indemn. Co.,* 285 So. 2d 652 (Fla. 1st DCA 1973). In *Baxter*, the court held that the insurer's refusal to pay on an automobile policy until it received an adverse coverage decision from an arbitrator could not entitle the insured to consequential damages from that refusal because the insurer's options under the policy could be exercised regardless of "good faith, bad faith, self-interest, malice, spit, or indifference." *Id.* at 656. That conclusion was reached in the face of a persuasive dissent that argued, as Buckley does here, under the "settled law of Florida" that there is in every insurance policy "implied by law a covenant of good faith and fair dealing," *id.* at 660 (citing in part *Auto Mut. Indemn. Co. v. Shaw,* 184 So. 852 (1938)). Moreover, the dissent found support for its conclusion from a California decision based on a California good faith statute. "While the Florida Legislature has not enacted an analogous statute, a comparison of the language of the California statute with the decisional law of Florida as stated in Florida jurisprudence explains why we have no statute. *The reason simply is that the principle of the California statute is already the law of Florida!" Id.* at 661 (emphasis added).

The only reasonable conclusion that can be drawn now is that the *Baxter* dissent's theory – that there is a contractual duty of good faith against an insurer enforceable at law – was never accepted by Florida courts until the Legislature adopted the very same type of statute in 1982. If, as Buckley argues, there was always an implied duty of good faith enforceable at law under the insurance contract, there would have been no need for the enactment of section 624.155. But as the Florida Supreme Court has repeatedly made clear, no theory of liability was *ever* available to an insured against the insurer until 1982. That

clearly includes a contractual theory of liability based on the implied covenant or warranty of good faith and fair dealing.

To argue now, 26 years later, that there was this contractual/implied theory of liability lying in the weeds all along simply flies in the face of historical fact and judicial precedent. And because we in federal court must apply state law in accordance with the decisions of the Florida Supreme Court and its intermediate appellate courts, *McMahan v. Toto,* 311 F.3d at 1079, it is not possible to conclude in the face of all these cases that Buckley has a contractual cause of action for breach of implied warranty of good faith outside the scope of a section 624.155 bad faith claim, which indisputably cannot be raised until this coverage case is over.

This is the same conclusion drawn by Judge Hurley in reviewing these same Florida decisions.[2] This proposition addresses Judge Middlebrooks's contention that the preemption provision of the statute, section 624.155(8), does not preempt an insured's right to bring a common law implied warranty claim. *Chalfonte,* No. 06-81046, at 9 (citing also *Lee Mem'l Health Sys. v. Medical Sav. Ins. Co.,* 2005 WL 2291679, *5 (M.D. Fla. 2005), *Dennis v. Northwestern Mut. Life Ins. Co.,* 2006 WL 1000308, *4 (M.D. Fla. 2006) (stating that "nothing

---

[2]        *Auto-Owners Ins. Co. v. Am. Yachts, Inc.,* 492 F. Supp. 2d 1379, 1383 (S.D. Fla. 2007).  As Judge Hurley explained:

> [A]t common law, the cause of action for bad faith arose only in the third-party context, and did not extend to first-party actions by an insured against its own insurer for failing to act in good faith when settling a claim. *See [Talat].* As the Florida Supreme Court previously stated, "Florida courts had refused to recognize the tort of first-party bad faith because the type of fiduciary duty that exists in third-party actions is not present in first-party actions and the insurer is not exposing the insured to excess liability." *Laforet,* 658 So.2d at 59.  It was not until 1982 that the Florida legislature modified the common law, effectively creating a statutory cause of action for first-party bad faith, and also codified earlier Florida court decisions authorizing third-party bad faith claims. *See* Fla. Stat. § 624.155(1)(b).

in Florida Statute § 624.155 prevents Plaintiff from asserting a claim for breach of the implied

covenant of good faith and fair dealing.")).  That provision states:

> The civil remedy specified in this section does not preempt any
> other remedy or cause of action provided for pursuant to any
> other statute or pursuant to the common law of this state.

Fla. Stat. § 624.155(8).  The problem with the reliance on this provision is that, when it was

enacted, there was no other "civil remedy" available to Buckley or any other insured, either

in tort or contract, against the insurer.   In other words, the statute is not disclaiming

preemption of the type of claim raised here because this claim was never recognized in Florida

before 1982.  The statute is irrelevant.  *See also Macola,* 953 So. 2d at 457 ("Unlike a first-

party bad faith action, which must be brought under [section 624.155], a third-party bad faith

action can be pursued under both the common law and the statute."); *Opperman v. Nationwide*

*Mut. Fire Ins. Co.*, 515 So. 2d 263, 265 (Fla. 5th DCA 1987) ("Unless the insured could allege

an independent tort such as fraud or intentional infliction of mental distress, the only relief

available on a first party claim [under section 624.155(8) was a cause of action for breach of

contract"); *Saenz v. Campos*, 967 So. 2d 1114, 1117 (Fla. 4th DCA 2007) (finding that section

624.155(8) provides for claims such as fraud, breach of contract, or intentional infliction of

emotional distress).

Therefore, based on *Quadomain* and our analysis of the issue once again, Buckley's

contractual claim for breach of QBE's implied warranty of good faith and fair dealing must be

dismissed as a matter of law.  Buckley's relief for the unreasonable or untimely payment of

its claim is limited to a section 624.155 action that does not ripen until this litigation is

concluded.  Count IV should be dismissed.

**D.**   *Count V - Violation of Section 627.70131*

Buckley raised a claim in Count V of the amended complaint for a violation of Fla. Stat.

§ 627.70131 that provides:

> (5)(a) (Effective June 11, 2007, as amended by ch. 2007-90)
> Within 90 days after an insurer receives notice of a property
> insurance claim from a policyholder, the insurer shall pay or
> deny such claim or a portion of the claim unless the failure to pay
> such claim or a portion of the claim is caused by factors beyond
> the control of the insurer which reasonably prevent such
> payment. . . . Failure to comply with this subsection constitutes
> a violation of this code. However, failure to comply with this
> subsection shall not form the sole basis for a private cause of
> action.

Buckley alleges that QBE failed to comply with the statute by failing to pay its Hurricane

Wilma claim within 90 days. [D.E. 52 ¶79]. Buckley seeks damages under the statute and

attorneys' fees.

QBE moved to dismiss this count based on the plain language in the text of the statute

that disclaims its application to a private cause of action. In response to the motion, and not

surprisingly, Buckley has cited the Court to no case that has upheld a civil cause of action or

civil claim under this particular statute. That is likely due to the fact that the statute says

that it cannot be the sole basis for a private cause of action.

Buckley nevertheless takes issue with that common sense interpretation of the statute

by focusing on the use of the word "sole". Buckley argues that had the legislature actually

meant what it seems to have said, it would not have added the term "sole". But by doing so,

Buckley theorizes, the legislature clearly intended to remedy an insurer's non-compliance with

this provision by allowing an insured to sue the insurer as long as it has other claims on which

to append the section 627.70131 claim.

Buckley's argument is quite meritless. When the legislature said that a failure to

comply with the statute could not be a sole basis for a private cause of action, it was not

intending for plaintiffs like Buckley to file such claims only as tag-along claims. It was clearly intending to bind the insurer to its provisions in response to a Department of Insurance review or a bad faith claim. Indeed, if Buckley ultimately pursues such a claim against QBE for this loss, Buckley's argument that QBE failed to timely process its claim can rely in part upon the requirements of section 627.70131. The statute is merely codifying a principle that Buckley seeks to enforce in this case.

This responds to Buckley's argument that the legislature must have intended plaintiffs like Buckley to have a remedy under the statute. What the face of the statute also provides, however, is that the legislature did not intend to create any private cause of action against the insurer that is based merely upon a violation of the statute. Buckley's argument to the contrary must fail. The Court readily concludes that the Florida Supreme Court would not interpret the unequivocal language used in this statute as a license for Buckley to pursue this claim.

Moreover, the Court agrees that QBE's second argument, that the statute does not apply here based on its effective date, is also grounds for dismissal of the claim. The allegations of the amended complaint show that the claim was initiated on or reasonably after October 24, 2005. The statute provides, however, that it applies only to an insurer that receives a property damage claim after June 11, 2007. On its face, therefore, the amended complaint does not fall within the scope of protection from this statute.

Buckley's argument that the statute can be applied retroactively is also without merit. The Court cannot apply the statute retrospectively when, on its face, it precludes its application to any claim asserted before June 11, 2007. Had that language not been in the statute, then Buckley's reliance on cases like *Old Port Cove Condo. Ass'n, Inc. v. Old Port Cove Holdings, Inc.,* 954 So. 2d 742, 745 (Fla. 4th DCA 2007), may have been more tenable. But

because we must apply the statutory text when it is unambiguous and conveys a clear and definite meaning, *Tillman v. State,* 934 So. 2d 1263, 1269 (Fla. 2006), there is no room for interpretation. The statute can only be effective after June 11, 2007, and there is no allegation in the amended complaint that falls within this effective date.

Count V must clearly be dismissed.

### III. CONCLUSION & RECOMMENDATION

For the foregoing reasons, it is hereby recommended as follows:

1.      QBE's Amended Motion to Dismiss Counts I, III, and IV of the Amended Complaint [D.E. 76] should be **GRANTED IN PART and DENIED IN PART** as follows:

a.      Count I should be dismissed with respect to allegations in the declaratory judgment count relating to enforceability of the insurance contract or a void co-insurance provision.  In all other respects, Count I should not be dismissed.

b.      Count III should not be dismissed.

c.      Count IV should be dismissed without leave to amend.

d.      Count V should be dismissed without leave to amend.

2.      Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 17th day of June,

2008.

EDWIN G. TORRES
United States Magistrate Judge