## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22988-CIV-MORENO/TORRES

BUCKLEY TOWERS
CONDOMINIUM, INC.

        Plaintiff,

v.

QBE INSURANCE CORPORATION,

        Defendant.

_____/

## OMNIBUS ORDER

This matter is before the Court upon the ripe discovery motions still pending in the case, some of which were argued before the Court at the discovery hearing held May 8, 2008 [D.E. 103]. The Court has reviewed all the pending motions and the corresponding responses and replies, and has considered the parties' arguments at the hearing and their supplemental authorities.

### I.  BACKGROUND

Buckley filed this declaratory judgment and contract action against QBE arising from property damage allegedly suffered due to Hurricane Wilma at Buckley's 576 unit condominium complex. Buckley purchased a commercial residential property insurance policy from QBE in May 2005 at a substantial premium. During the term of that policy, Hurricane Wilma struck on October 24, 2005, allegedly causing structural damage throughout the condominium complex. Buckley filed a claim on the policy with QBE. Despite conducting inspections by QBE representatives at the property, the amended complaint alleges that QBE, two and one-half years later, failed to adjust, pay or settle the claim. [D.E. 52 ¶¶1-15].  The

amended complaint alleges four causes of action: (1) declaratory judgment; (2) breach of contract for failure to provide coverage and seeking recovery of actual cash value; (3) breach of contract for failure to provide coverage and seeking replacement cost value; (4) breach of implied warranty of good faith and fair dealing; and (5) statutory violation of Fla.Stat. § 627.70131 by failing to pay or deny coverage within 90 days.  The only claims that should remain in the case following QBE's motion to dismiss are the declaratory judgment claims and the breach of contract claims for failure to provide coverage that seek actual cash or replacement cost value for the damages caused by the hurricane.

The discovery period in this case has now closed; however, several motions related to disputed discovery issues were timely filed prior to the cutoff.  Accordingly, the issues raised in those motions will be considered.

## II.  PRINCIPLES APPLICABLE TO ALL DISCOVERY MOTIONS

Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party." Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules.  *McMahon v. Eastern Steamship Lines, Inc.*, 129 F.R.D. 197, 198 (S.D. Fla. 1989); *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001).  To sustain its discovery objections in response to the pending motions to compel, Defendant must, therefore, show that the requested discovery has no possible bearing on the claims and defenses in this case.  *See Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978); *Graham*, 206 F.R.D. at 254 ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.").  This means that Defendant must show either that the requested discovery (1) does not come within the broad scope of relevance as defined under

Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure. *Millinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 695 (S.D. Fla. 2007) (citing *Giardina v. Lockheed Martin Corp.*, 2003 WL 21276348 (E.D. La. May 30, 2003)).

Information requested is deemed relevant and discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 345 (1978); *see also* Local Rule 26.1.G.3. This requires that discovery be provided if the information has some bearing on the claims or defenses in the case. *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001); Fed. R. Evid. 401(evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence).

Admissible evidence is almost always discoverable. *See, e.g., Terwilliger v. York Int'l Corp.,* 176 F.R.D. 214, 218 (W.D. Va. 1997). But even if the information is only useful for purposes of impeachment or corroboration, it may still be discoverable whether or not it will ultimately be admissible in evidence at trial. *Hickman v. Taylor,* 329 U.S. 495, 511 (1947); *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.,* 2007 WL 1526649, *2 (S.D. Fla. May 22, 2007). Thus evidence that may demonstrate bias, an interest in the outcome of the litigation, or a motive to testify in a certain way can be discoverable prior to trial. *Jeld-Wen, Inc. v. Nebula Glasslam Int'l, Inc.,* 2008 WL 756455, *9 (S.D. Fla. March 11, 2008).

In the context of first-party insurance coverage disputes, evidence geared solely to support a bad faith claim is premature and not discoverable, as arguments related to bad faith liability under Fla. Stat. § 624.155 are premature until the coverage dispute is resolved. *Milinazzo,* 247 F.R.D. at 696; *see also Blanchard v. State Farm Mut. Auto Ins. Co.,* 575 So. 2d

1289, 1291 (Fla. 1991).  But that does not foreclose discovery into documents that may be relevant to both types of claims.  *Milinazzo,* 247 F.R.D. at 696 n.5.  Documents or testimony that relates to the investigation, processing and analysis of an insured's claim are discoverable in a first-party insurance coverage case.  *See, e.g., The Atrium on the Ocean II Condo. Ass'n, Inc. v. QBE Ins. Corp.,* 2007 WL 2972937, *2-3 (S.D. Fla. Oct. 9, 2007).

Finally, relevant or discoverable evidence may still be protected from disclosure under Fed. R. Civ. P. 26(c) where good cause is shown based upon a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm that will be suffered without one.  *E.g., In re PE Corp. Sec. Litig.,* 221 F.R.D. 20, 26 (D. Conn. 2003); *Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C. 1991); *see also Gulf Oil v. Bernard,* 452 U.S. 89, 102 n.16 (1981).  A court must balance the competing factors involved in determining whether good cause has been shown. *See Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985); *Quantachrome Corp. v. Micromeritics Instrument Corp.,* 189 F.R.D. 697, 700 (S.D. Fla. 1999).

### III.   MOTIONS RELATED TO QBE AND ITS MANAGING AGENT

Three pending motions filed by Buckley relate generally to production of testimony and documents relevant to financial incentives QBE's managing and adjusting agent may have in processing QBE insured claims.  First, QBE has moved to compel additional deposition answers from Jeffrey Eisen, President of Florida Insurance Underwriters ("FIU") that served as QBE's managing adjusting agent, based on counsel's objections during the deposition and directions to the witness not to answer [D.E. 43].  Second, QBE has moved to compel and hold in contempt FIU for not producing documents at the deposition of Mr. Eisen responsive to a subpoena duces tecum [D.E. 60].  Third, QBE has moved to compel QBE to produce additional

documents in response to Request Nos. 8 and 9 of the Second Request for Production [D.E. 105].

The common factual thread behind all three motions is Buckley's attempt to gather evidence that FIU and QBE's business arrangements provide FIU with a financial incentive to minimize the amount of damage FIU attributes to covered losses when adjusting claims for QBE, commonly referred in the industry as "loss ratio bonuses, or a profit commission or a contingency commission." Although Mr. Eisen discussed the topic generally in his deposition, QBE's counsel objected to more specific questions and repeatedly instructed Mr. Eisen not to answer those questions.  QBE also objected to production of documents related to such loss ratio bonuses either directly from FIU by subpoena, or from QBE by way of the Second Request for Production.

Before addressing the particular problems raised by the answers and objections during Mr. Eisen's deposition, we will address the overall issue first.  QBE's position is that any documents or testimony related to financial incentives that FIU may have to adjust claims in a certain way are not relevant or admissible in a first-party coverage case.  QBE maintains that their only relevance is in the context of bad faith litigation, where the intentional delay or denial of covered losses is addressed through a section 624.155 action against the insurer. In that type of case, such issues are relevant and discoverable.  QBE argues, however, that they are not relevant or discoverable in the first-party coverage dispute, where the only issue is whether the insured's loss is covered by the terms of the policy and, if so, the total dollar value of the covered loss.

Generally speaking, the proper scope of discovery in a coverage case does not include discovery targeting bad faith issues.  *E.g., Milinazzo,* 247 F.R.D. at 696.  And the types of documents at issue here, financial or contractual documents between an insurer and its

insurance adjusting or managing agency, do not fall under the specific processing and analysis category related to the insured's claim that is generally discoverable. At first blush, therefore, QBE's position is sound. Buckley argued initially that such discovery was relevant, at least, to Buckley's breach of contract claim for breach of the implied covenant of good faith and fair dealing, that Buckley maintained could be raised together with the insurance coverage claim. As that claim may be foreclosed in this case, however, Buckley has no strong basis to argue that these types of documents are directly relevant to either Buckley's claims or QBE's defenses to the insurance coverage dispute.

Buckley's secondary but stronger argument focuses on the relevance of these financial incentive documents for impeachment purposes. Buckley makes a compelling case that contracts that QBE entered into with FIU are potential fodder for impeachment at trial because they may be used to attack FIU's credibility or bias to the extent that its witnesses testify at trial on QBE's behalf. There is no dispute that FIU has a strong link with QBE and acts as QBE's managing and adjustment agent in the State of Florida for high-rise condo insurance policies. Its agreement with FIU allows it to manage insured claims, adjust or settle claims, and make payment decisions on those claims. [D.E. 43-4 at 6-7 (Depo. Excerpt. of Jeffrey Eisen)]. In this case, FIU adjusted the claim filed by Buckley and FIU witnesses may undoubtedly be called to testify at trial regarding their evaluation of the alleged damage and their decision to pay or not pay on those claims. Based on these circumstances, Buckley concludes that it has the right to obtain discovery from QBE and FIU as to the particular details of the management agreement and the loss profit bonuses that comprise a portion of FIU's compensation from QBE, in an effort to show that FIU's witnesses are financially motivated to testify on QBE's behalf and skew their testimony to further FIU's overall financial interest.

Buckley relies especially on two cases from this District that compelled production of documents primarily based upon their value for impeachment purposes. *See, e.g., Jeld-Wen,* 2007 WL 1526649 at *9 (impeachment evidence is "a classic example of the type of evidence that should be discoverable in litigation."). Buckley certainly is right in principle that documents that are inadmissible or irrelevant to the parties' case in chief may be discoverable as impeachment evidence at trial. The relevance of these financial documents as impeachment evidence, however, is not on par with the types of documents at issue in the *Jeld-Wen* decisions. In that case, the documents in question were not internal to one particular entity involved in litigation. They evidenced a potential source of impeachment based upon one party's settlement terms with another party, which could be used to show that one of the settling parties had a financial incentive to take sides with its settlement partner and against a plaintiff involved in the litigation. The court concluded that the plaintiff had demonstrated a tangible way how the particular documents in question could provide a source of impeachment evidence in the context of that case, why they were not otherwise available to that plaintiff, and why their production was essential prior to trial.

The factual distinction here is that Buckley has plenty of fodder for impeachment if FIU witnesses testify on QBE's behalf, regardless of whether they obtain these documents. QBE's managing adjustment agent is FIU. FIU's compensation is directly tied to QBE. FIU has already admitted that a portion of its compensation is based on financial loss-ratio bonuses. FIU's President, Jeffrey Eisen, was in fact designated by QBE as its corporate representative with respect to many of the issues in this litigation. There is thus a well-established financial integration between FIU and QBE that will not be lost on the trier of fact. Unlike what was at issue in *Jeld-Wen,* the source of possible impeachment of FIU

witnesses is self-evident.  Production of extrinsic evidence that further supports that basis for impeachment is frankly cumulative.

Cumulativeness, admittedly, is not enough per se to preclude a party from obtaining discovery.  And here Buckley makes a compelling case that the details of the financial arrangement, which are not known to Buckley, will present a more tangible basis for impeaching FIU witnesses than what is known now.  The problem Buckley runs into, however, is that the Court also has to guard against an unnecessary and distracting blurring of the lines between pure coverage cases and bad faith disputes.  Clearly, the record shows that Buckley desires to pursue both avenues in this litigation.  Florida law, however, presents a material obstacle to that effort.  We have an obligation to faithfully uphold the application of Florida law in this diversity case, at least to the extent that it does not conflict with Federal procedural principles.

As a result, if the general rule were that every managing agent or insurance adjuster's financial or contractual documents with an insurer were subject to production in a breach of contract coverage dispute, the scope of discovery in these cases would be materially increased. The litigation cost and time required to address that broadened discovery would undermine the essential purpose of this case – adjudicating whether coverage applies at all and the amount that the insured is due under the policy.  That targeted process should not become unwieldy and should not consume unnecessary resources.  Moreover, to the extent that there are real bad faith issues in a given case, based in whole or in part upon the insurer's or its agents' monetary incentives to delay or deny payment to insureds, that is what a section 624.155 claim is all about.

Accordingly, document requests served on QBE directly, or on its agent through subpoena, that request production of this type of financial information cannot be compelled

based on an attenuated impeachment argument. The Court will not compel production of Request Nos. 8 and 9 of the Second Request for Production, nor will it hold FIU in contempt for failing to produce these documents at Mr. Eisen's deposition.[1] The information requested is generally non-discoverable in a first-party coverage case. Even if it could be discoverable for impeachment purposes, production of such collateral information is unnecessary, especially when other available and less-intrusive avenues of discovery may yield similar results. *See* Fed. R. Civ. P. 26(c)(3); *see, e.g., Nguyen v. Excel Corp.,* 197 F.3d 200, 208-09 (5th Cir. 1999) (for good cause shown court may order discovery taken by a method other than that selected by the party seeking discovery); *Sanchez v. City of Santa Ana,* 936 F.2d 1027 (9th Cir. 1990) (affirming denial of motion to compel non-party records for impeachment where more focused discovery could be employed); *Giraudo v. Henkels & McCoy, Inc.,* 1993 WL 415613 (D. Or. 1993) (denying motion to compel financial and employment of nonparty employees where less intrusive means, like depositions, could be employed).

That latter point leads us to the specific issue involving the deposition of Mr. Eisen. Buckley moved to compel better answers based upon repeated objections based on relevance, followed by instructions to the witness not to answer the given question purportedly because a motion for protective order was being filed. The questions that went unanswered related to specific questions asked of the witness as to the details behind the loss ratio bonus FIU

---

[1]     Buckley correctly notes that FIU may have waived its objection to production of these documents when it failed to timely file an objection under Rule 45 to Buckley's subpoena. Nor did QBE timely move for protective order to raise relevance objections to the subpoena. The Court will, however, excuse their technical non-compliance with the Rule because it is also true that QBE had made Buckley aware of its position well beforehand. Thus, Buckley was not surprised when FIU failed to produce the documents at issue. Moreover, the fact that QBE and FIU's substantive objection to the subpoena has carried the day is a defense to a finding of contempt. With that said, the Court notes that QBE and FIU risked a finding of waiver to any objections to the documents requested based upon their failure to follow basic requirements of the Federal Rules of Civil Procedure.

apparently receives from QBE as part of its compensation.  The witness provided some general answers to questions relating to the loss ratio bonus and FIU's management agreement with QBE.  When counsel sought to delve further into the details of that agreement, the witness invoked a "proprietary" objection and defense counsel followed that up with several instructions not to answer additional questions. [D.E. 43-4].

The same was true for certain questions asking the witness to explain whether FIU had any internal guidelines related to the manner in which it adjusts, pays or settles claims for QBE.  The witness was directed not to answer those questions because QBE would be moving for protective order and the witness was produced only for underwriting purposes and nothing else. [D.E. 43-4 at 55 - 57].

It is important to remember that the witness was testifying in his individual capacity as well as President of FIU and its corporate representative.  QBE's counsel represented him during the deposition, naturally based on the business relationship between QBE and FIU, its managing agent.  Prior to the deposition, neither FIU nor QBE moved for any protective order on any issue that would arise in the deposition, nor on the documents requested in the subpoena duces tecum that included a request for production of all management agreements between FIU and QBE.

Once the deposition began on March 26, 2008, counsel was bound by the Local Rules of this Court that speak directly to the issues raised in this motion:

> The following abusive deposition conduct is prohibited: . . .
> 3.  Instructing a deponent not to answer a question except when to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under Federal Rule of Civil Procedure 30(b)(4).

S.D. Fla. Local R. 30.1.A.3.  The Discovery Practices Handbook in this District adds that "[i]nstructing a witness not to answer is greatly disfavored by the Court, and is a practice

which one should use only in an appropriate extraordinary situation, usually involving the privilege . . . .  A lawyer who improperly instructs a witness not to answer runs a serious risk that the lawyer and/or the client may be subject to substantial monetary sanctions . . . ." S.D. Fla. Local R. II.B.2, Gen. App. A - Disc. Prac. Handbook.

The Court's Local Rule is in accord with Rule 30 of the Federal Rules of Civil Procedure that provides that a deposition is supposed to proceed as it would at trial, Fed. R. Civ. P. 30(c), and that a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).  Fed. R. Civ. P. 30(d)(1).

Presumably, after instructing the witness not to answer several questions during the deposition and referencing an intent to "move for protective order," counsel was trying to invoke this provision found in Rule 30(d)(4):

> At any time during a deposition, on motion of a party of the deponent *and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party,* the court in which the action is pending . . . may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26( c). . . . Upon demand of the objecting party or deponent, the taking of the deposition must be suspended for the time necessary to make a motion for an order.

The record shows, however, that counsel did not in fact suspend the deposition to file the purported motion for protective order, nor did counsel file it the day after the deposition, or at any reasonable time thereafter.  One week after the deposition, Buckley moved to compel answers from Mr. Eisen.  QBE, however, never sought any affirmative relief despite its protestations and intentions during the deposition.

It is thus quite apparent that QBE and its counsel expressly violated this Court's Local Rule 30.1 and Rule 30(d).  The Court's review of the deposition shows that no privilege or court

limitation supported any one of the instructions to the witness not to answer. Instead, each of the objections was based entirely on a relevance argument. But this Court has for many years enforced the principle that pure relevance objections cannot be the bases for instructions not to answer during a deposition. *See, e.g., Quantachrome,* 189 F.R.D. at 700 ("Thus, it is improper to instruct a witness not to answer a question based on form and relevancy objections. It is arguable whether objections based on relevancy should even be made during the deposition. See Fed.R.Civ.P. 32(d)(2)(A) (objections based on relevancy are not waived if not made during deposition). In any case, if counsel feels that he must make a relevancy objection, the objection should briefly be made for the record, and the deposition should continue with the testimony being taken subject to the objection."); *see also Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir. 1995); *Gober v. City of Leesburg,* 197 F.R.D. 519, 520 (M.D. Fla. 2000).

Undoubtedly, QBE's experienced counsel knew full well what this Court's Rules were when he made his objections and directions not to answer. He obviously hoped, if the Court agreed that the relevance argument was well founded, that the Court would excuse his violation of the Rule. Counsel miscalculated in several respects.

First, even though the Court agrees that production of extrinsic evidence as to FIU's financial and contractual arrangements with QBE should not be compelled in this coverage case, the Court finds that the less intrusive deposition procedure is an appropriate vehicle for Buckley to inquire as to the witness's knowledge of those arrangements and the effect that they may have on the witness's credibility and bias. The credibility of a witness is always relevant. So long as unnecessary or time consuming methods like burdensome production requests are not used, a party has a right to gather straightforward testimony in a deposition that could be used as a basis to impeach the witness at trial. Even if irrelevant to the claims

and defenses in the case, Buckley had a right to inquire of the witness as to his financial arrangements with QBE.  If the witness knows, as he assuredly does, then the witness is obliged to answer.

Second, the objection that the information sought was "proprietary" is not a privilege, as that term is used in Rule 30(d), and is therefore not enough to prevent the witness from answering a question.  Moreover, the witness acknowledged in the deposition that loss bonus ratios are well established in the industry and that disclosure of FIU's arrangements would not necessarily cause it any harm.  Finally, the obvious solution to protect FIU's confidential information was a protective order that sealed the deposition and prevented its dissemination, not a blanket refusal to answer the questions posed during the deposition.  We note again that no such protective order motion was filed in this case.

Third, QBE's argument at the deposition and in its response that the instructions not to answer were appropriate, because the witness was not designated to testify as to management agreement or loss bonus ratios, is also flatly inconsistent with this Court's procedures.  Judge Gonzalez explained in *King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D. Fla. 1995), that a Rule 30(b)(6) notice only provides a corporate representative with the obligation to prepare to answer questions related to the matters designated.  The use of such a notice, however, does not limit what questions can be asked at the deposition.  "If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern. . . . [I]f the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."  Thus, the witness could not have been sanctioned for lacking knowledge of a topic

that was not designated in the notice, but he was required to answer the question posed and provide testimony to the extent the witness could.[2]

Fourth, even if QBE's counsel had some good faith basis to violate this Court's Rules as it related to the management agreement issues, he clearly had no basis to do so with respect to questions asked of the witness relating to its customary claims handling processes and guidelines. That topic is clearly not outside the scope of a coverage case. QBE has not provided any basis to find that such processes are tantamount to a trade secret. Thus, on this record, QBE's counsel had no possible legal basis to preclude the witness from answering questions related to this issue. His objections based on relevance were flatly improper and sanctionable.

Fifth, counsel's stated intention to "move for protective order" is a lame excuse for his violation of this Court's Rules. Rule 30(d)(4) is not a backdoor mechanism for counsel to instruct witnesses not to answer certain questions. Nor is it designed in any way to preclude a witness from answering questions based on relevance. And, to the extent QBE's counsel or anyone else is relying on this provision to accomplish what Local Rule 30.1 and Rule 30(d) prohibit, this Order should dissuade them from doing so in the future.

Rule 30(d)(4) is a narrow procedure designed for extraordinary situations where an examination is being conducted in bad faith or in an unreasonable, annoying or oppressive manner. *See, e.g., SEC v. Oakford Corp.*, 141 F. Supp. 2d 435 (S.D.N.Y. 2001). In those limited situations, the Rule expressly allows counsel to terminate the deposition pending the Order of the Court. But if counsel fails to follow the specific requirements of the Rule, counsel

---

[2]     This argument is also meritless considering that the witness was not a party witness, and thus not a true 30(b)(6) witness. The witness was representing a non-party in the case. He was deposed based on a Rule 45 subpoena, which means there were no topical restrictions that applied to the testimony in any event.

will not be shielded from appropriate sanctions for interrupting the deposition process.  *See, e.g., Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc.,* 233 F.R.D. 648, 653 (C.D. Cal. 2006); *In re Omeprazole Patent Litig.,* 227 F.R.D. 227, 230 (S.D.N.Y. 2005) ("It is not the prerogative of counsel, but of the court, to rule on objections. . . . [I]f the plaintiff's attorney believed that the examination was being conducted in bad faith . . . or that the deponents were being needlessly annoyed, embarrassed, or oppressed, he should have halted the examination and applied immediately to the ex parte judge for a ruling on the questions, or for a protective order, pursuant to Rule 30(d).") (citation omitted).

Here, counsel did not suspend the deposition to seek relief from the Court.  The record also shows that there was nothing about the questioning that could be deemed oppressive, harassing, or in bad faith.  Rule 30(d)(4) could thus not have been used by counsel as a cover for improperly instructing the witness not to answer.  Moreover, even if one gives him the benefit of the doubt that he did not believe the questioning warranted a suspension of the deposition in its entirety, counsel was still obligated to *immediately* move for protective order to invoke the Rule's protections.  That did not occur either.  No motion was filed that day, the day after, or even after several days passed.  The issue was raised by Plaintiff's motion to compel.  Indeed no motion for protective order was ever filed.  Therefore, the violations of the Court's Rules are not excused by illusory reliance on Rule 30(d)(4).  *See, e.g., Nutmeg Ins. Co. v. Atwell, Vogel & Sterling,* 120 F.R.D. 504, 508 (W.D. La. 1988) (sanctioning counsel under Rule 37; "The touchstone for determining the existence of such an exception to Rule 30(c) should be the potential harm from disclosure, and in the absence of a showing of some serious harm likely to result from responding to any given question, the policies behind Rule 30(c) require the answers to be given. . . . Even in the case of an instruction not to answer based on privilege, the party who instructs the witness not to answer should *immediately* seek a

protective order. . . . Rather, counsel unilaterally directed the witness not to answer and left it to defendant Equifax to bring the matter before the court in the form of a motion for sanctions.  This course of conduct was improper and in violation of the Federal Rules of Civil Procedure.") (emphasis in original); *American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 175 (D. Mass. 1985) ("[Rule 30(c)] means that, as a general rule, instructions not to answer are improper.  The only exceptions are those [that] deal with questions which seek information in the form of trade secrets and privileged information.  Even in the case of questions of this type, it is the duty of the attorney instructing the witness not to answer to *immediately* seek a protective order.") (emphasis added).

The record here shows that counsel violated Rule 30(d)(4) by not immediately filing a motion for protection following the deposition.  On this basis alone, any otherwise meritorious arguments to the questions posed during the deposition were thus waived.  And even if not waived, relevance objections do not permit counsel to instruct a witness not to answer these questions.  Finally, counsel's relevance objections are substantively meritless because Buckley was entitled to ask impeachment-related questions of the witness that related to FIU's processing guidelines and its financial arrangements with QBE.

Having found that counsel violated Local Rule 30.1 and Rule 30(c), the Court must then consider what relief to grant under Rule 37.  Buckley's motion requests that the Court order that the deposition of Mr. Eisen be re-set and that Mr. Eisen provide answers to all questions posed.  That relief will be granted.  The deposition may take up to two additional hours.  Additionally, the Court will require that the court reporter and/or videographer cost of the re-scheduled deposition be borne by QBE.  Finally, though the record could allow the Court to find that QBE's position was not substantially justified, warranting additional monetary sanctions under Rule 37(a)(4), the issue was certainly close on the management agreement

question and thus no additional monetary sanctions will be imposed.  The Court also trusts that counsel who defended this deposition will more faithfully follow this Court's Orders and Rules in the future.

### IV.  MOTIONS RELATED TO WAREHAM DEPOSITION

As we just stated, QBE's counsel's conduct during Mr. Eisen's deposition was improper but not necessarily in bad faith.  The same cannot be said, however, for QBE counsel's conduct at a later deposition, which transpired after the Court made it clear at the May 8th hearing that it strictly enforced the rule barring lawyers from instructing witnesses not to answer questions based on relevance.

The issue arises in response to Buckley's motion to compel additional answers from John Wareham, a field adjuster retained by QBE that did work on the inspection of the Buckley property, who was deposed on May 23, 2008 [D.E. 118].  That deposition was scheduled and taken in response to this Court's Order to Show Cause [D.E. 108] when Mr. Wareham failed to appear at a previously scheduled deposition.  The Court's Order required him to appear at his deposition and "answer all questions posed to him" in lieu of holding him in contempt.  Mr. Wareham complied with that Order and appeared for his deposition, during which he was represented by QBE's counsel, Evelyn Merchant.

Ms. Merchant, however, also violated Local Rule 30.1 and Rule 30(c) on several occasions by instructing Mr. Wareham not to answer questions regarding whether the witness was personally paying for his lawyer's representation, whether he knew the location or telephone number of another witness, and on what discussions or dealings Mr. Wareham was having with the Department of Financial Services regarding an investigation regarding Mr. Wareham's adjusting license.  Counsel repeatedly instructed the witness not to answer those questions, based primarily on their lack of relevance to the issues in this case.  With respect

to the issue of payment for legal fees, counsel invoked the attorney-client privilege.  With respect to the communications with the Department of Financial Services, counsel invoked some undisclosed privilege (not the Fifth Amendment) and Buckley's counsel's harassment of the witness.  QBE's counsel also indicated that she intended to seek the protection of the Court through a motion for protective order.

        For the reasons fully developed and the authorities cited in the preceding section about another deposition, the Court readily finds that QBE's counsel violated the Court's Rules.  Though the Court could excuse counsel's good faith mistake that questions about the witness's payment of fees for counsel are not in fact privileged as attorney-client communications, the Court cannot condone instructions not to answer questions based on relevance.  Nor can the Court excuse counsel's invocation of some unknown and unheard-of privilege with respect to dealings with the Department of Financial Services, when Mr. Wareham's testimony at the deposition clearly shows that he was in an adversary relationship with the Department to some extent.  Therefore, counsel had no basis to foreclose further inquiry into those dealings.  Finally, the Court would be more sympathetic with counsel's assertions of harassment were it not for the fact that it took a threat of contempt to get the witness to appear at the deposition at all, and the fact that the deposition transcript reveals that the questions asked were not outside the bounds of what one could reasonably expect at Mr. Wareham's deposition.

        Again, Buckley is entitled to question a witness about matters that may go to the witness's credibility, whether or not those matters will ever be admissible at trial under Rules 404(b), 608 or any other evidentiary rule.  QBE's counsel does not have the unilateral right to disagree with the focus of the examining attorney's questions regardless of how irrelevant she may think they are.  And in this case Buckley's counsel at least had a good faith basis to ask the impeachment-related questions he was asking given that they related to the witness's

license to be an insurance adjuster and this is a case about an insurance claim that he adjusted.  QBE's response, that these questions were so far outside the scope of permissible inquiry, is utterly meritless.

Frankly, the transcript shows that the witness was prepared to answer the questions that were posed, whether or not he liked them, and that very little additional time would have been required in this deposition had he been given the chance to answer them.  Counsel did the witness no favors by repeatedly instructing him not to answer those questions because the Court will grant the pending motion's request to re-depose the witness.

Additionally, the Court finds that counsel's purported intent to file a motion for protective order, like her colleague's, does not shield her from appropriate sanctions.  Again, the deposition was not suspended, no motion for protective order was filed that day or the day after, or even a week after.  Instead, the pending motion for protective order was filed together with the response to Buckley's motion to compel.  That is plainly insufficient under Rule 30(d)(4), as the authorities cited above show.  QBE's motion protective order will be denied as being procedurally untimely and substantively meritless.  Once again, *counsel are not permitted to instruct a witness not to answer questions at a deposition based on relevance* and an illusory intent to move for protective order does not shield counsel from appropriate sanctions.  *See* S.D. Fla. Local R. II.B.2, Gen. App. A - Disc. Prac. Handbook ("A lawyer who improperly instructs a witness not to answer runs a serious risk that the lawyer and/or the client may be subject to substantial monetary sanctions. . . .").

Finally, the Court is troubled by the fact that counsel took this approach at the deposition despite this Court's admonition at the May 8th hearing, and despite having been previously sanctioned by Judge Ryskamp in another QBE case this year, *Townhouses of Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.,* 06-81132-Civ-Ryskamp/Vitunac, D.E.

82 (S.D. Fla. Jan. 11, 2008) (granting motion to compel deposition based on counsel's instructions to non-party witness not to answer questions based on relevance).   Judge Ryskamp awarded the plaintiff in that case its attorneys' fees and costs.   One would think that such an Order, filed in the public record in this District, would be enough to dissuade someone from taking such an approach ever again.   Apparently it was not.

Therefore, additional measures are necessary to address the pattern of misconduct evidenced here.   First, the Court finds that counsel's actions at the deposition were not substantially justified, and thus Buckley will also be awarded its attorneys' fees and costs in filing this motion and in re-taking the deposition of Mr. Wareham, as per Rule 37(a)(4).   QBE shall also bear the cost of the court reporter at the rescheduled deposition.   Second, the deposition of Mr. Wareham will be re-scheduled but counsel may not take more than one additional hour, as per Fed. R. Civ. P. 30.   Third, QBE's counsel, Evelyn Merchant, is personally sanctioned under Rule 37(a)(4) and shall reimburse this Court for the unnecessary judicial resources incurred in addressing her violation of this Court's Rules.   Counsel shall submit within five days a check in the amount of $500.00 payable to the Clerk of the Court, and shall not seek or accept reimbursement for that amount from her client or her law firm. Fourth, the Court will defer until the conclusion of this case the decision whether or not to refer counsel to the Court's Peer Review Committee under S.D. Fla. Local R. II.C, Atty. Disc. Rules.

* * *

## V.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

1.     Plaintiff's Motion to Compel Testimony of Jeffrey Eisen [D.E. 43] is **GRANTED** in accordance with this Order.

2.     Plaintiff's Motion for Order to Show Cause why Florida Intracoastal Underwriters Should Not be Held in Contempt [D.E. 60] is **DENIED**.

3.     Plaintiff's Motion to Compel Second Request for Production [D.E. 105] is **DENIED**.

4.     Plaintiff's Motion to Compel Deposition Testimony from John H. Wareham and Request for Sanctions [D.E. 118] is **GRANTED** in accordance with this Order.

5.     Plaintiff's Motion to Strike Response in Opposition to Motion [D.E. 129-1] is **DENIED AS MOOT**.

6.     Defendant's Motion for Protective Order [D.E. 129-2] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 26th day of June, 2008.

EDWIN G. TORRES
United States Magistrate Judge