UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22988-CV-GOLDBERG

BUCKLEY TOWERS
CONDOMINIUM, INC.,

    Plaintiff,

v.

QBE INSURANCE CORPORATION,

    Defendant.
_____/

## OPINION AND ORDER

This matter is before the Court upon several pending motions in this case. The Court has reviewed all of these pending motions and the corresponding responses and replies.

### I. BACKGROUND

In October 2005, Buckley Towers Condominium, Inc. ("Buckley Towers") was damaged when Hurricane Wilma hit South Florida. Subsequently, Buckley Towers attempted to recover its losses from its insurer, QBE Insurance Corporation ("QBE"), but was unable to settle its claim as QBE alleged fraud and disputed the loss amounts. Buckley Towers then brought this action against QBE to recover under the applicable insurance policy. The trial lasted from February 2, 2009 to February 13, 2009. Upon deliberation, the jury determined that QBE was liable under its insurance policy and awarded Buckley Towers $19,379,431. QBE has filed a multitude of post-trial motions which this Court will now address.

## II.   QBE'S MOTION FOR JUDGMENT AS A MATTER OF LAW

QBE's first post-trial motion was its Motion for Judgment as a Matter of Law (D.E. 348). QBE argues that Buckley Towers' claim should fail as a matter of law because there is no evidence that Buckley Towers ever submitted an actual cash value ("ACV") claim as required under the insurance contract. In the alternative, QBE argues that even if the evidence supports a conclusion that an ACV claim was filed, Buckley Towers is not entitled to recover on a replacement cost value ("RCV") or law and ordinance basis because Buckley Towers never actually made the required repairs. However, QBE's arguments lack merit.

Under Rule 50(b), "a moving party must meet a heavy burden in order to prevail on a motion for judgment as a matter of law. The standard of review . . . is whether 'the facts and inferences viewed in the light most favorable to the opposing party, 'point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" United States v. Vahlco Corp., 720 F.2d 885, 889 (11th Cir. 1983) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969)). QBE is unable to meet this high standard. As the Court previously held, sufficient evidence existed for a reasonable jury to conclude that Buckley Towers submitted an ACV claim. The testimony of Ms. Denise Valderamma, the Public Adjustor, and the second sworn proof of loss statement could have led a reasonable jury to conclude that Buckley Towers submitted an ACV claim.

As far as the RCV provision, Buckley Towers was also entitled to recover. Under Buckley Towers' policy, QBE was obligated to provide RCV benefits only if the Plaintiff actually repaired or replaced the damaged property upon which the claim was based. Admittedly, Buckley Towers never made these repairs, but is still able to recover due to the defendant's frustration of Buckley Towers' efforts to make the repairs. This precise situation was presented recently in Vantage View, Inc. v. QBE Insurance Corporation, 2009 WL 536546,

at *3-5. In Vantage View, the jury found that the defendant had breached the insurance contract by failing to pay the plaintiff for damages covered under the applicable insurance contract. Id. at *3. Despite plaintiff's failure to make the required repairs for an RCV claim, the Court held that Vantage View was able to recover under the policy because the "Defendant had frustrated Plaintiff's efforts to make any repairs and prevented Plaintiff's compliance with the replacement cost provision in the policy." Id. The Vantage View court went on to explain how this interpretation was supported by the policy language which provided that RCV would not be paid unless the repairs are made as soon "as reasonably possible". Id. at *4. The Court went on to conclude that it was not "'reasonably possible' for the insured to make repairs without the receipt of the funds from the insurer." Id. In short, the court in Vantage View recognized the necessary interaction between ACV and the RCV/Law and Ordinance provisions of the insurance contract, and recognized the insured was unable to make the repairs because the ACV value had never been paid on the claim.

Buckley Towers' insurance contract is subject to the same interpretation, as this Court has repeatedly noted. Without the ACV recovery, Buckley Towers was frustrated from making the repairs necessary to recover under the RCV provision. Florida law provides that "a party, who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong." North Am. Van Lines v. Collyer, 616 So. 2d 177, 179 (Fla. Dist. Ct. 1993). Allowing QBE to rely on the fact that Buckley Towers was unable to make the necessary repairs would allow precisely this situation to occur, and therefore, the Court finds that Buckley Towers was entitled to recover on an RCV basis.

Last, Buckley Towers was entitled to recover under the law and ordinance provision of its insurance policy. QBE argues that Buckley Towers failed to present any evidence that this

3

provision applied to its claim. However, the Court finds that the testimony of Yvan Girard and Daniel Lavrich as to the need for code-compliant windows and glass doors established the need for law and ordinance recovery. As far as QBE's related argument that Buckley Towers failed to make the repairs and code upgrades within two years of Hurricane Wilma as required under the policy, the Court's frustration analysis again applies. The Court will not allow QBE to benefit from its failure to pay Buckley Towers claim on an ACV basis and rely upon this failure to exclude recovery under other provisions of the insurance policy. As a result, QBE's Motion for Judgment as a Matter of Law (D.E. 348) is denied.

### III.   QBE'S MOTION TO AMEND THE FINAL JUDGMENT

QBE's next post-trial motion is a Motion to Amend the Final Judgment (D.E. 350). QBE argues that the final judgment in this case should be amended because the jury award is duplicative. In QBE's view, the RCV award encompassed any law and ordinance damages and therefore, separate recoveries are inappropriate. This argument also lacks merit.

The determination of whether to amend a final judgment is committed to the sound discretion of the trial court. Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-1239 (11th Cir. 1985). This discretion is not typically exercised barring manifest error, newly discovered evidence, manifest injustice to one of the parties, or based upon an intervening change in the controlling law. 11 Charles Alan Wright et al., Federal Practice and Procedure 2d § 2810.1 (2007). QBE's argument is based upon the testimony of Buckley Tower's expert witness, Gerald Zadikoff. Mr. Zadikoff testified that his damage estimate included the costs of replacing some of the damaged building components to comply with current building codes. However, this testimony is not enough to establish that the jury awards for RCV and law and ordinance are duplicative. Mr. Zadikoff's report does not state the amount

4

of increased costs due to meeting current building requirements, and the jury could have reasonably concluded, based upon this and other testimony, that it would cost an additional $803,500 per tower to bring its components up to code beyond the RCV value of its claim. The nature of the special interrogatory verdict was sufficient to prevent the jurors from duplicating the damage award, as the jury was specifically instructed not to total the various damage amounts. Accordingly, QBE's Motion to Amend the Final Judgment (D.E. 350) is denied.

### IV.   QBE'S MOTION FOR A NEW TRIAL

QBE's last post trial motion is a Motion for a New Trial (D.E. 351). QBE raises three potential issues, which in its view, require this Court to order a new trial: (1) juror misconduct; (2) prejudicial conduct by the Court; and (3) substantial error within the jury instructions. These arguments also lack any merit.

Rule 59 of the Federal Rules of Federal Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have been heretofore been granted. . . ." Fed. R. Civ. P. 59(a). However, "a new trial may be ordered only when the interests of substantial justice are at stake." Shaps v. Provident Life & Accident Ins. Co., 244 F.3d 876, 885 (11th Cir. 2001). The interests of justice do not in this case require this Court to order a new trial.

### A. Alleged Juror Misconduct

QBE's first argument is that the failure of one of the jurors in this case to disclose several facts during the voir dire process merits a new trial. After the conclusion of the trial, QBE researched the backgrounds of the jurors in this case and presented its findings to the Court regarding a specific juror. On the face of the findings, the Court held an evidentiary hearing on

5

May 1, 2009 during which the challenged juror testified under oath. The results of this hearing do not compel this Court to grant defendant's motion for a new trial. Overall, to obtain a new trial based upon juror misconduct, the moving party must "(1) demonstrate that a juror failed to answer honestly a material question on voir dire, and then (2) show that a correct response would have provided a valid basis for a challenge for cause." United States v. Carpa, 271 F.3d 962, 967 (11th Cir. 2001). Additionally, the Eleventh Circuit requires a showing of actual bias before a new trial may be granted. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1473 (11th Cir. 1992). As required in Carpa, this Court first examines each accusation to determine whether the question was answered honestly, and then examine whether the correct response would have provided a valid basis for a for cause challenge. Carpa, 271 F.3d at 967.

1. The Juror's Employment Status

QBE's first challenge relates to the juror's response as to his employment status. Specifically, the Court asked "What is your occupation," to which the juror responded "I work in the I.T. department." QBE argues that this was a misleading response because the juror actually worked in the Southern District of Florida's I.T. department, and should have revealed this fact. As to this allegation, the Court finds that the juror answered the actual question before him honestly, and will not continue to address any alleged bias stemming from QBE's failure to follow-up more thoroughly. Furthermore, even had the juror mentioned that he was employed at the Southern District of Florida, this would not have led to a valid for cause challenge.

2. The Juror's Involvement in Past Litigation

QBE next challenges the juror's responses to the questions relating to his and his family's involvement in past litigation. Specifically, the Court asked "Have you ever been involved in civil litigation? If so, what kind of case was it?" and "Have any members of your immediate

6

family been involved in civil litigation? If so, what kind of case was it?" The Court further explained that "[in] other words, has anybody appeared either as a witness or did you sue somebody, or did you have to defend yourself against somebody that did sue you?" Transcript of Oral Argument at 34 (Feb. 2, 2009). The juror in this case, it seems did not reveal some instances of prior litigation – either his own litigation or that in which his family was involved. It is the finding of this Court that the juror, however, did not intend to mislead the Court. The juror testified in the evidentiary hearing that he was unaware that foreclosure actions were litigation – an explanation this Court finds very plausible. The other instances of litigation discovered by QBE may have been easily forgotten by the juror, as he testified at the hearing, as one of the cases is nearly twenty years and another relates to a car accident which never went to trial. The case which QBE alleges involves his family members can be traced to an ex-wife. Accordingly, the Court finds that even though the juror failed to reveal past and current instances litigation, the Court finds that this was not done dishonestly or with any intent to conceal. Furthermore, even if this juror answered the Court's questions "correctly", these revelations would not have merited a for cause challenge, and therefore, QBE's motion for a new trial on this "concealment" lacks merit.

3. <u>The Juror's Prior Insurance Claims</u>

QBE also challenged the juror's failure to reveal several insurance claims. During voir dire, the jurors were asked "Have you ever made an insurance claim? If so, was an adjustor involved and how was the experience?" The evidence later discovered by QBE revealed that the juror had potentially failed to reveal several automotive claims. Addressing this failure under <u>Carpa</u>, the Court finds that although the juror again may not have technically answered the question correctly, the Court will not go so far as to find that the juror answered this question

dishonestly. However, even had the juror been dishonest, no basis for a for cause challenge would have resulted from a full revelation of the relevant information related to past-automobile insurance claims.

4.  The Juror's Ownership of Condominiums

QBE also challenges the juror's response to the following question: "Have you ever lived in a high-rise apartment or condo? If so, was it on the ocean?" To this question, the juror answered "no". QBE, in its post-trial research, discovered that the juror owned several condominiums. During the post-trial evidentiary hearing, the juror testified had never resided in these condominiums, but that he did own several units. Ownership of condominiums goes beyond the actual question asked during voir dire. Accordingly, the Court finds that the juror answered this question honestly, and will not examine any arguments as to prejudice to the parties stemming from the condominium ownership.

**B. Alleged Prejudice from Court Commentary**

QBE also argues that comments by the Court and errors made in the jury instructions require this Court to order a new trial. First, the Court will address QBE's arguments related to its comments and "judicial intervention." Overall, a jury verdict is not impaired by the Court's commentary unless the comments are so prejudicial as to deprive a party of a fair trial. United States v. Preston, 608 F.2d 626, 636 (5th Cir. 1979). While QBE points to many comments throughout the trial transcript, these comments in total did not deprive QBE of a fair trial. However, QBE did specifically object to one comment made by the Court during the testimony of Mr. Sansone that this Court should address. During Mr. Sansone's testimony, the Court made a comment that QBE interprets to mean that the Court viewed the witness as presenting rehearsed testimony which, in turn, deprived the defendant of a fair trial. Specifically, the Court

stated the witness "automatically thinks what you are going to ask him, but you don't ask him the question. And he knows what he's supposed to do on the stand, so he wanders all over the place." When this was objected to, the Court promptly provided the following curative instruction:

> Before we start, the Court would like to make a few comments to the jury. During the course of Ms. Sim's examination of Mr. Sansone, the Court made a number of comments with reference to the way or lack of things responding to questions.
>
> First of all, you have been told a couple, on a couple of occasions, including the preliminary instructions, you will get it again in final instructions. My comments about the way in which a witness responds or doesn't respond or anything of the like, my comments all during the trial [are] never to be taken as the fact that I favor one side or the other, that I like or dislike a [witness], that I like or dislike a [witness], that I don't agree with a [witness] one way or the other, none of that is to be taken from the comments I make.
>
> I did make some comments with reference to Mr. Sansone having to do with the kind of questions and saying you know the question, and then in other words, what I meant was, that he wasn't answering the question directly the answer to the question that was being reported. And out of frustration, I said please answer that question. And what I meant to do is to tell counsel in that case, rephrase it so that he would understand it.
>
> And some of my comments that I make either with respect to this witness or that I've done with any other witness on either side, either the plaintiff or defendant in the case, the comments to the lawyers [are] not to be taken that I have taken sides or that I have an opinion on who should win or who should not win. The facts are I have no idea. And that's up for you people to decide.

Transcript of Oral Argument at 83-84 (Feb. 5, 2009). Even if the Court's statement regarding Mr. Sansone prejudiced QBE in any way, this curative instruction, and the final instructions to the jury, "purge[d] the taint of a prejudicial remark because the jury is presumed to follow jury instructions." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992).

9

### C. Alleged Error from the Court's Jury Instructions

Last, QBE argues that it is entitled to a new trial because the Court erred in giving its instructions to the jury in this case. This argument again relates to QBE's objections to allowing the jury to award RCV and law and ordinance damages if the jury found that QBE's failure to pay the ACV claim prevented Buckley Towers from making the repairs required to recover on a RCV or law and ordinance basis. Again, this issue was recently addressed in Vantage View, Inc. v. QBE Insurance Corporation, 2009 WL 536546 (S.D. Fla. 2009), as discussed above in response to QBE's motion for Judgment as a Matter of Law, or in the Alternative, Motion to Amend or Alter Judgment. The Court will not allow QBE to benefit from its frustration of Buckley Towers' ability to make the necessary repairs. See North Am. Van Lines, 616 So. 2d at 179. Accordingly, this Court finds no error in its jury instructions which would require the grant of a new trial and denies QBE's Motion for a New Trial (D.E. 351) as to all three grounds raised in the motion.

### V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED**:

1. Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, Motion to Amend or Alter Judgment (D.E. 348) is **DENIED**;

2. Defendant's Motion to Alter or Amend Final Judgment (D.E. 350) is **DENIED**;

3. Defendant's Motion for a New Trial (D.E. 351) is **DENIED**;

4. Defendant's Motion to Quash (D.E. 386) is **DENIED** as moot;

5. Defendant's Motion to Quash (D.E. 405) is **DENIED** as moot;

6. All remaining motions are referred to Magistrate Judge Edwin G. Torres pursuant to Administrative Order 2008-09.

**DONE AND ORDERED** in Chambers at New York, New York this 26th day of May 2009.

*Richard W. Goldberg*

Richard W. Goldberg

United States District Judge