UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22988-CIV-GOLDBERG/TORRES

BUCKLEY TOWERS CONDOMINIUM, INC.,

    Plaintiff,

v.

QBE INSURANCE CORPORATION,

    Defendant.
_____/

**ORDER ON PENDING MOTIONS**

    This matter is before the Court on motions pending before the Court, and referred for disposition, following a mandate entered by the United States Court of Appeals for the Eleventh Circuit following its decision [D.E. 663] issued July 30, 2013 (the "Opinion") reversing and remanding in part this Court's Final Order [D.E. 608]. That Order adjudicated the charging lien disputes of the lawyers and divided the $4,633,646.86 in attorneys' fees among three law firms representing the prevailing Plaintiff in the underlying action. Only former Plaintiff counsel Katzman Garfinkel Rosenbaum LLP ("KGR") and Becker & Poliakoff, P.A. ("Becker") filed appeals from that Order. [D.E. 616, 619]. The mandate reversing the Court's Order only remanded the quantum meruit award as to KGR. [D.E. 608 at 18].

    Yet, immediately upon issuance of the mandate, Plaintiff Buckley Towers Condominium, Inc. filed a Motion to Compel the Appellee Rosenbaum Mollengarden

Janssen & Siracusa PLLC ("RMJS") to return previously disbursed attorneys' fees to the Court registry. [D.E. 662]. That motion is fully briefed and ripe for adjudication. Also pending is a Motion for Hearing filed by the only prevailing party to the appeal, KGR, which seeks to adjudicate the limited issue remanded by the Eleventh Circuit mandate. [D.E. 664]. RMJS opposes only the motion to compel filed by Plaintiff. KGR opposes in part Plaintiff's motion to compel because, to the extent any monies are to be returned to the Court registry from RMJS, it should be only to benefit KGR's post-mandate entitlement to a greater quantum meruit award.

## I. BACKGROUND

The only party appellant who prevailed in part on appeal of this Court's Final Order is KGR. That Order awarded RMJS the bulk of the $4,633.646.86 contingent fee earned by the multiple sets of lawyers who worked on the case on Plaintiff's behalf. KGR was only awarded $894,897.00 of the total fee award. KGR argued on appeal that it was entitled to a greater award. KGR maintained that Florida law requires that the fee be apportioned among the lawyers according to their respective effort and the benefit to the client conferred by each of them, rather than merely giving the discharged law firm its "hours times rates" and the subsequent law firm the overwhelming balance of the contingency fee. Second, it argued that KGR's time and effort in securing the favorable judgment was undervalued. And, as a result, KGR was entitled to the entirety of the contingency fee minus a quantum meruit award for RMJS. [Appellant KGR Br. at 13, No. 12-12039 (11th Cir.)].

The only other party who appealed the Final Order, Becker, had been awarded $681,063 for its equitable charging lien. Becker's appeal of that award was then settled for a total of $1,200,000 with RMJS during the course of the appeal. [D.E. 641, 643]. As a result, with all parties' approval the Court authorized the disbursement of additional funds from the Court registry.[1] Specifically, Becker and RMJS's settlement agreement was comprised of the $681,063 awarded in the Final Order plus an additional $618,937 of the fees awarded to RMJS. [D.E. 646, 654]. The Eleventh Circuit acknowledged that settlement and disbursal in its opinion and rendered its judgment with that in mind. [D.E. 663 at 5 n.4].

Although Plaintiff never appealed the Final Order, it argued as an appellee that the Final Order was wrong for different reasons. Plaintiff argued that the

---

[1] Specifically, this was accomplished through adjudication of three motions: (1) Becker's Emergency Motion to Stay Execution on Judgment and to Use Funds in Court Registry in Lieu of Supersedeas Bond [D.E. 611], in which KGR joined [D.E. 612], (2) Plaintiff's Second Motion to Order Release of Funds Held in the Court Registry [D.E. 613], and (3) B&P's and RMJS's Notice of Settlement and Joint Motion for Disbursement of Funds. [D.E. 641]. During an August 15, 2012 hearing, KGR, Becker, and RMJS entered into an agreement that resolved most of the three motions, culminating in entry on August 20, 2012 of the Amended Order to Partially Release Funds Held in the Court Registry and Stay Further Execution of Judgment (the "Amended Order"). [D.E. 654]. Paragraph eight of the Amended Order provides that "[t]he parties' agreement is limited to the matters set forth in this Order and is without prejudice to the rights of any party in any other respect." Pursuant to the Amended Order, the $4,633,646.86 of fees was then disbursed in its entirety, portions going to the three law firms: RMJS received $1,538,750.86, Becker received $1,200,000.00, and KGR received $894,897.00. These three figures total $3,633,646.86. Consistent with the conditional resolution of the motions, and to moot the need for any supersedeas bond for appeal, the parties stipulated to maintaining $1,000,000.00 of the $4,633,646.86 fee in the court registry (mainly funded from RMJS's awarded fee) to be "maintained in place, as per Rule 62, until further Order of the Court pending KGR's appeal." [D.E. 654]. That Amended Order was never appealed by any party in the case and is now final.

entire contingency fee agreement was void based on *Frates v. Nichols,* 167 So. 2d 77 (Fla. 3d DCA 1964), as well as Florida's lawyer disciplinary rules.  Plaintiff claimed that its three sets of lawyers had nothing but a quantum meruit claim because the original fee agreement had been voided and otherwise terminated.  Consequently, Plaintiff asked that the Court disburse the remaining funds in the court registry to Buckley Towers. [Appellee Buckley Brief at 5, 13].  *Moreover, Plaintiff asked the Eleventh Circuit to order that all funds previously awarded to RMJS and Becker be returned to the court registry.* [*Id.* at 13 n.7].

The Court of Appeals issued its mandate on July 30, 2013 [D.E. 663] that reversed the Court's Final Order but *only* as to KGR.  The parties in the present dispute have picked and chosen discrete language from the Opinion to further their positions.  We, however, must focus on what the Eleventh Circuit held to identify the specific mandate that we are duty bound to carry out.

Specifically, the Court's holding is plainly and unequivocally set forth at page 18 of the Opinion, the only point where the Court's remand is mandated:

> While we appreciate the magistrate's focus on judicial efficiency and ruling in equity, it was improper to value KGR's charging lien without considering the significant work KGR did on the appeal.  Thus, we must remand the matter back to the district court to properly consider the *Rosenberg* and *Poletz* factors, including the benefit conferred on Buckley by KGR's representation throughout the trial and the preliminary appellate work. . . . In the end, while the magistrate applied an incorrect legal standard and did not fashion an award that fairly compensated KGR, there is only one issue to be decided on remand—KGR's proper quantum meruit award.

The Court of Appeals then specifically directed the District Court to "exercise its sound discretion to determine a proper value for KGR's charging lien," [*Id.* at 19, n.12] under "the totality of the circumstances surrounding the professional relationship, including time spent on the matter, the recovery sought, the skill demanded, the results obtained and the attorney-client contract," and particularly considering the "benefit actually conferred on the client." [*Id.* at 16.]

That is the entirety of the "mandate" language in the discussion. The Court's remand Order was pursuant to its earlier discussion that, first, expressly rejected RMJS's argument (supporting this Court's Final Order) that it was entitled to the bulk of the contingent fee based upon *Frates* and that case's application to the situation where a partner exits an initial firm retained under a contingent fee agreement. The Court held that RMJS was not entitled to the contingent fee and, instead, the original firm hired by Plaintiff – Becker – retained entitlement to the contingent fee.[2]

The Court, second, did *not* hold that either *Frates* or any Florida bar disciplinary rule voided the original contingent fee agreement. To the contrary, the Court relied on both sources of authority for delineating Florida common law on distribution of a total contingent fee award. [Id. at 13-14]. The Court thus concluded that Becker was entitled to the entire contingent fee, less the former

---

[2] "However, when a partner exits the initial firm and the client follows, the initial firm is entitled to the entire contingency fee, less the former partner's partnership share. *Frates,* 167 So. 2d at 82 (holding fees were assets of the initial firm and the former partner is only "entitled to receive his partnership share . . . of the net fee in each such case.")." [*Id.* at 6-7].

departing partner's partnership share, and less the quantum meruit amounts owed by any law firm subsequently associated with that departing partner. [Id. at 7, 15]. By not voiding the entire contingent fee agreement, the Court impliedly rejected Plaintiffs' argument as appellee on appeal that the entire contingent fee should have been voided, that all three firms involved were only due their quantum meruit fees, and significantly that the monies previously distributed should have been returned to the Court registry and, ultimately, returned to Plaintiff. This also impliedly rejected KGR's argument on appeal that it was entitled to the contingent fee, not just a quantum meruit award.

The thrust of Plaintiff's motion ignores all of this and focuses instead on footnote 12 of the Opinion:

> We note that because B&P settled its claim for $1.3 million, it is entitled to no greater award than that amount to which it agreed. *See Rosenberg,* 409 So. 2d at 1022 (limiting an attorney's fee recovery to the contract fee agreed to by the attorney). Consequently, any award that B&P would be entitled to above the $1.3 million agreed-upon amount should be returned to Buckley. For example, if the magistrate determines KGR's quantum meruit award to equal the $894,897 awarded plus the $75,232.50 sought in appellate fees, for a total of $970,129.50, then (a) RMJS would be entitled to $85,696.31 (approximately 2.34% of the remaining $3,663,517.36); (b) B&P would be entitled to its $1.3 million; and (c) the remaining $2,277,821.05 set aside in the court registry for the charging liens would be returned to Buckley. This example is used entirely for demonstrative purposes and is not intended to dissuade the district court from using its sound discretion to determine a proper value for KGR's charging lien.

A plain reading of that language at the end of the Opinion, which admits to having been included only for "demonstrative purposes," suggests that RMJS cannot retain any of the monies previously distributed beyond that limited amount. Thus, Plaintiff's motion seeks to compel RMJS (or rather its successor) to return anything beyond what footnote 12 contemplates because RMJS was never entitled to anything more than that plus an additional quantum meruit amount. Applied literally, that would require the Court to vacate its final amended distribution Order, which was approved by all parties on the record and never appealed. That could also require the Court to potentially reopen, on proper motion, the original distribution to Becker that has now been closed.

But that plain reading and the confusion that would ensue then runs into this conflicting language in an earlier footnote in the opinion:

> We do not intend to significantly burden the district court with this decision, and think it within the district court's discretion to simply reconsider the amount of KGR's quantum meruit award based on the arguments and evidence previously submitted to the court, or, if the district court deems it more appropriate, to allow the parties to re-argue the issue.
> [D.E. 663 at 18 n.11].

The Court has wrestled with this conflicting language and the parties' current positions post-mandate to arrive at a sound conclusion. The answer, it seems to us, is to follow what the Eleventh Circuit directs us to follow under well-established law of the case principles designed to achieve finality, a goal that has been quite elusive in this case.

## II.   ANALYSIS

A.   *Motion to Compel RMJS to Return Fees*

Following the reversal of the Court's Final Order, our task now is simply to carry out the Court's mandate. *See Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1511-12 (11th Cir. 1987). "A different result would encourage and invite district courts to engage in *ad hoc* analysis of the propriety of appellate court rulings.  Post mandate maneuvering in the district courts would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process.  It would also eliminate any hope of finality." *Id.*

Under this principle, the mandate rule, courts are bound by the appellate court's mandate and "cannot vary it, or examine it for any other purpose other than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* at 1511 (quoting *In re Sanford fork & Tool Co.,* 160 U.S. 247, 255 (1895)).  The purpose for this rule is creating efficiency, finality and obedience within the judicial system. *Id.* (citing *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir. 1984)).

To further these goals, it is also well established that the mandate rule requires application of the appellate court's holdings, *not* dicta.  "The district court 'is bound to follow the appellate court's holdings, both expressed and implied.'" *National Fire Ins. Co. of Hartford v. Fortune Constr. Co.,* 233 F. App'x 890, 894 (11th Cir. Apr. 9, 2007) (quoting *Piambino v. Bailey,* 757 F.2d 1112, 1120 (11th Cir.

1985)). Dicta – references in an opinion that are not "necessary to deciding the case then before us" – carries no such weight because the mandate rule "only applies if our prior opinion determined [the issue], explicitly or by necessary implication." *Transamerica Leasing, Inc. v. Inst. of London Underwriters,* 430 F.3d 1326, 1331 (11th Cir. 2005) (quoting *Piambino,* 757 F.2d at 1119).

The perils of dicta in judicial opinions have been well chronicled. Judge Carnes, for instance, persuasively explained in *Edwards v. Prime, Inc.,* what dicta was and how it should be regarded:

> We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case. *E.g., Watts v. BellSouth Telecomms., Inc.,* 316 F.3d 1203, 1207 (11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."); *United States v. Aguillard,* 217 F.3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." (quotation marks omitted)). All statements that go beyond the facts of the case – and sometimes, but not always, they begin with the word "if" – are dicta. *See, e.g., United States v. Eggersdorf,* 126 F.3d 1318, 1322 n. 4 (11th Cir. 1997) ("[L]anguage in ... [an opinion] not necessary to deciding the case then before us" is dicta); *Moon v. Head,* 285 F.3d 1301, 1318 (11th Cir. 2002) (Carnes, J., concurring) ("Those statements are dicta. They are dicta because they go beyond the facts of the [earlier] case itself").

602 F.3d 1276, 1298 (11th Cir. 2010).

Judge Carnes succinctly synthesized the value of dicta as being a nullity: "[D]icta is not binding on anyone for any purpose. *See, e.g., McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1077 (11th Cir. 1996) ("[W]e are not required to follow dicta contained in our own precedents"); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller,* 957 F.2d 1575, 1578 (11th Cir. 1992) (because what is said in a

prior opinion about a question not presented there is dicta, and dicta is not binding precedent, a later panel is "free to give that question fresh consideration")." *Edwards,* 602 F.3d at 1298.

The problem with dicta is readily apparent when a district court is duty bound to follow the mandate rule. What happens when the holding of the case is inconsistent with language found elsewhere in an opinion that supports a party's contrary position? That was the issue the Eleventh Circuit dealt with in *National Fire* where one party focused on language from an earlier decision that purportedly had not been followed on remand, while the other party argued that this language was not what the court actually held. 233 F. App'x at 893-95. The Court acknowledged that the language at issue in that case could have been misinterpreted and not reflected what the Court actually meant. But the Court then agreed that, at best, it was dicta because it was not necessary in deciding the case then before them. "The district court was free to conclude, as it did, that Fortune had never asserted an affirmative claim against National Fire" even though the earlier opinion referenced a counterclaim that included an affirmative claim. *Id.* at 894. This case illustrates that under the mandate rule a district court must follow an opinion's holdings, either express or implied, and nothing more.

Our dilemma here further illustrates the point. The language of footnote 12 by its own terms identifies itself as demonstrative to illustrate what the court could do on remand. But it certainly does not represent the holding of the opinion because it relates to a circumstance that has not yet arisen. The holding is plainly

stated in the body of the opinion – that only KGR's quantum meruit award must be reassessed.

When compared to the bulk of the language in the remaining parts of the Opinion, the demonstrative language in footnote 12, as interpreted by Plaintiff now, is wildly inconsistent. Footnote 11 had just finished stating that the remand would not require much difficulty. Yet, reopening the Court's distribution Orders *that were not on appeal* and which were acknowledged as having been executed in the Opinion itself would entail much difficulty indeed.

Apart from that, the language of footnote 12, again as construed by Plaintiff, seems plainly incorrect because the Court's opinion had just reaffirmed Becker's contingent fee. Becker was indeed entitled to the full amount of the contingent fee, based on the Court's application of *Frates,* yet the dicta in the footnote suggests that Becker's settlement with a third party – RMJS – somehow magically transforms itself into an agreement with the original Plaintiff to limit its fee. The authority cited in footnote 12 has no relationship whatsoever to that situation.

But, when one reads footnote 12 as applied to what was before the Court after the final (i.e. unappealed) distribution Order of August 20, 2012, the demonstrative language of the Court's footnote makes perfect sense. Given the Court's holding, on remand if the Court found that the corrected/revised quantum meruit award to KGR did not exceed the amount in the court registry, any remaining monies in the court registry had to be returned to Plaintiff less the partnership share due to Rosenbaum. That is the position taken by KGR now post-

mandate, which argues that after KGR's fee is increased, if there is any remainder of the fees, that remainder shall be divided 97.66% to Buckley and 2.34% to RMJS.

Upon a fresh review of the record as a whole and a careful analysis of the Court's opinion to identify the mandate that we are to follow, we agree with that interpretation of the Court's Opinion. We also agree that, if the amount in the court registry is not sufficient, we would have to then consider – then and only then – whether the distribution Order must be revisited to comply with the Court's mandate. If that occurs, equitable principles would seem to dictate that any difference would have to come from Rosenbaum and RMJS, given the Court's finding in the Final Order that the maximum owed by the client in this case is the full amount of the contingent fee and nothing more. That finding, which RMJS did not appeal and which was untouched by the Court's Opinion and remand, would have to be applied in that circumstance.

Rosenbaum and RMJS take issue with that possibility based upon all parties' concurrence with the amended distribution Order and the contractual effect that such concurrence has on his fee. We need not resolve that now because it, ironically, would be dicta (and hence improper). We, similarly, need not address now KGR's position that it should on remand end up receiving the entire contingent fee distributed to RMJS (which is the position it took on appeal yet was impliedly rejected by the Court's Opinion that fixed KGR's fee as being a purely quantum meruit amount). But the quantum meruit determination that the Court mandated has not yet been made, so we will leave this issue open as well.

Finally, our resolution of this pending motion is not entirely final even as it relates to Plaintiff's original position. The only holding we reach here is that to comply with the strict requirements of the Court's mandate, it is not absolutely certain whether or not any monies will have to be reimbursed. Plaintiff will have a further opportunity to reargue its position later after KGR's quantum meruit award is finally fixed – as required by the Court's mandate. For now, we only find that there has been no compelling showing why we should require any reimbursement at this point in time into the court registry pending resolution of "the only issue" on remand – KGR's quantum meruit award.

### B.  *KGR's Motion for Hearing*

The other post-mandate motion is KGR's motion for a hearing on the issue of the appropriate award of attorneys' fees to KGR. It goes without saying at this point that KGR, post-mandate, is entitled to such a hearing. We quarrel only, however, with the mechanism by which KGR seeks to adjudicate the issue. The Court's Opinion remanded this one issue – KGR's quantum meruit award – and criticized the Court's treatment of that award using only the prevailing party fee application submitted back in March 2009. Though it agreed that the quantum meruit award that KGR was due could be based in part on that fee application, the Court of Appeals held that it was error for this Court to rely entirely on that application without considering other factors that KGR could show as to the benefit actually conferred to the client by its work on the case while it worked on post-trial matters and during the first appeal. [D.E. 633 at 17-18].

Now, however, the pending motion suggests that we could simply have a one-hour hearing, presumably working off that same application and other parts of the existing record, to comply with the Court's mandate. And, KGR adds, that summary consideration could then result in the Court awarding a quantum meruit award that eats up the entire contingent fee that Becker was due.

To be fair, we should have Ordered the following relief sooner, but we were trying to first adjudicate the motion to compel and understand what the Court's mandate required. Now that that issue has been tabled for now, as explained above, we will deny the motion for hearing without prejudice. A hearing will ultimately be scheduled, but only after KGR files a proper fee application that strictly follows the Court's mandate. The Court rejected KGR's argument for a direct contingent fee award, holding that it was entitled only to a quantum meruit award. The Court directed this Court to review that request with a fresh eye under all the *Poletz* factors identified in the Opinion. We cannot do so on this record because KGR must first submit that revised and updated application, which takes into account what the Eleventh Circuit held and what it required this Court to do on remand. Our review of the existing record reveals that we have nothing on paper to truly that guide our decision and comply with the mandate.

Therefore, KGR shall file a revised and updated fee application that is in accord with the mandate. KGR must comply within twenty-one days with the requirements of Local Rule 7.3 and file the final application within forty-five days. All interested parties must be given an opportunity to review and object to the

application, as set forth in the Local Rule.  Again, any objections to the application, and any responses filed in opposition to the filed application, must take into strict account the requirements of the mandate.  A hearing will be scheduled thereafter.

### III.  CONCLUSION

For the foregoing reasons, it is ORDERED AND ADJUDGED:

1. Plaintiff's Motion to Compel RMJS to Return Previously Disbursed Attorneys' Fees [D.E. 662] is **DENIED** without prejudice and with leave to renew in accordance with this Order.

2. KGR's Motion for Hearing [D.E. 664] is **DENIED** without prejudice pending compliance with the requirements of this Order.

**DONE AND ORDERED** at Miami, Florida, this 31st day of March, 2014.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge